**In re Petition for Naturalization filed on Behalf of John Alfred MENDIOLA, the child of Carmelita Pike Mendiola.**

No. 2270–947489.

United States District Court, S.D. New York.

Nov. 10, 1986.

As Amended Nov. 24, 1986.

Thomas A. Church, New York City, for petitioner.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., Robert J. Sidi, I.N.S., by Lawrence Chamblis, Asst. U.S. Atty., of counsel, New York City, for respondent.

SWEET, District Judge.

Carmelita Mendiola ("Mendiola"), has petitioned this court for the naturalization of her son, John Alfred, pursuant to 8 U.S.C. § 1433(a). For the reasons set forth below, the petition is granted and John Alfred Mendiola will be naturalized at the term of the court to be held on November 12, 1986.

**Prior Proceedings**

The procedural history in this case has been unusual and has necessitated an immediate determination of the most recent motion brought on by Order to Show Cause which was heard on November 7, 1986.

In May, 1986, while unrepresented, Mrs. Mendiola, as a United States citizen, sought an interview to obtain naturalization for her son whose eighteenth birthday occurs on November 15, 1986. She stated that she was advised that the procedure could not be completed before that date. On October 9, 1986, Mendiola filed an Order to Show Cause for a Writ of Mandamus directing the Immigration and Naturalization Service ("the Service") to accept her petition for the naturalization of her son under 8 U.S.C. § 1433(a), which provides:

> A child born outside of the United States, one or both of whose parents is at the time of petitioning for the naturalization of the child, a citizen of the United States, either by birth or naturalization, may be naturalized if under the age of eighteen years....

On October 10, the parties were heard in this court and the Service agreed to ensure that her petition would be accepted either that day or the next working day, which, because of Columbus Day weekend, was October 14. A court order was entered to this effect.

On October 27, Mendiola filed another Order to Show Cause. Between the time that a petition is filed, and the Service holds a preliminary hearing to evaluate the petition, there is normally a waiting period of thirty days. As the petition was filed on October 14, the INS hearing would not take place until November 14, one day before her son's birthday.

On October 31 the Service mooted Mendiola's Order to Show Cause by informing the court that in the interest of orderly adjudication of the issues, it would voluntarily accelerate the waiting period and hold the hearing. November 7 was set as the hearing date on the Service's recommendation to enable the parties time to appeal if necessary.

On November 5, the Service filed a recommendation that Mendiola's petition not be granted because she is not a citizen of the United States. At the November 7 hearing Mendiola sought to have her petition granted over the opposition of the Service and was advised by the court informally that the petition would be granted and added to the November 15 calendar. The Service sought to stay the effect of this determination which stay was denied.

## The Facts

Mendiola claims her citizenship through the following chain. Her great-grandfather, Edward Pike, Sr., was born a United States citizen in Connecticut and went to the Philippines with the armed services. He married, and remained in the Philippines for the rest of his life. One of his offspring was Edward Pike, Jr., who was born a United States citizen by dint of his father's citizenship. Edward, Jr. is Mendiola's grandfather and resided in the Philippines his entire life.

Edward, Jr.'s daughter, Pelagia Pike, is Mendiola's mother. She had been issued a certificate of citizenship by the Attorney General. That certificate has never been revoked. Mendiola, too, has been issued a certificate of citizenship by the Attorney General. Like her mother's, it has never been revoked. In addition, Mendiola has been issued a United States passport. John Alfred, Mendiola's son, becomes eighteen years of age on November 15, 1986.

## Conclusions

The Service has challenged this chain of citizenship at the link between Edward, Jr. and Pelagia on the grounds that Edward was ineligible to pass his citizenship to his offspring because, although a United States citizen, he never himself resided in the United States, a position which may be well founded.[1]

However, Mendiola is now the holder of a certificate of citizenship issued by the Attorney General and this certificate has never been revoked. There are both statutory and regulatory requirements which the Service must meet before it can revoke an administratively issued certificate of citizenship. *See* 8 U.S.C. § 1453; 8 C.F.R. § 342.1–342.9 (1986). These include notice of the allegations on which the revocation is to be based, a sixty-day period in which the holder of the certificate may answer the allegations, and the opportunity to appear in person, with counsel, before a naturalization examiner. 8 C.F.R. § 342.1. The Service can effect service for the revocation either by personal service, or by registered or certified mail, return receipt requested, to the person's last known address. 8 C.F.R. § 342.2. After a hearing, the naturalization examiner must prepare a report containing findings and a recommendation which is forwarded to the district director of the Service who approves or rejects the recommendation. 8 C.F.R. § 342.7. If the director accepts the recommendation that the certificate be cancelled, then the party still has a right to an administrative appeal. 8 C.F.R. § 342.8. The Service has not taken these steps, although they have represented that they have begun them with respect to both Mendiola and her mother. The record does not reflect whether the Service has yet served Mendiola in the revocation proceeding.

By statute, Congress has directed that an administratively issued certificate of citizenship or naturalization shall have the

---

1. The Service's position is that between Edward Pike, Jr.'s birth in 1900 and his daughter Pelagia's birth in 1925, Section 1943 of the Revised Statutes provided that "the rights of citizenship should not descend to children whose fathers never resided in the United States." The Service argues that the phrase "United States" does not encompass what was formerly the United States Possession of the Philippines. In support of this argument, they point to Section 201(e) of the Nationality Act of 1940, 54 Stat. 1137, which explicitly allowed citizenship to be transmitted to a person born in a possession of the United States to a parent who has resided in the United States "or one of its outlying possessions." From the 1940 Act, the Service draws the inference that naturalization was *not* available to this category of persons before the Act's enactment. The Services takes the position that the examiner who originally granted a certificate of citizenship to Pelagia Pike made a simple "administrative error" and granted her the certificate because he did not understand the law.

   Mendiola, on the other hand, argues that the examiner made no mistake, that he understood and applied the law correctly and in accordance with the Service's policy. She charges that the Service is challenging her certificate of citizenship now because it has changed its policy. It appears to the court that she is making a kind of administrative estoppel argument, but, as noted, the issues were not fully briefed.

same force and effect as a court-ordered certificate of citizenship or naturalization:

A certificate of naturalization or of citizenship issued by the Attorney General under the authority of this subchapter shall have the same force and effect in all courts, tribunals, and public offices of the United States ... as a certificate of naturalization or of citizenship issued by a court having naturalization jurisdiction.

8 U.S.C. § 1443(e).

A court issues such a certificate only after having entered an order which establishes the person's citizenship. Such an order, "like other judgments of a court of record, is accepted as complete evidence of its own validity unless set aside. It may not be collaterally attacked." *Tutun v. United States*, 270 U.S. 568, 577, 46 S.Ct. 425, 426, 70 L.Ed. 738 (1926) (Brandeis, J.) (citations omitted).

Here, without having revoked Mendiola's certificate of citizenship through the process just described, the Service seeks to strip her of one of a citizen's basic privileges—the right to the naturalization of an infant son. If Mendiola possessed a court-issued certificate of citizenship (which would be backed by a court order), this attack would be barred in its present form and would require a court proceeding to vacate the prior order.

The position taken by the Attorney General in *In re Flegenheimer*, 41 Op.Atty. Gen. 452 (1960), also sheds light on the issue. There the Attorney General wrote:

In my opinion, Congress, in providing for the issuance of certificates of citizenship by the Attorney General and theretofore by the Commissioner and Deputy Commissioners of Immigration and Naturalization, and in specifying that in all public offices of the United States such a certificate should have the same effect as a judicial certificate of naturalization or citizenship, meant to put the matter at rest and to deprive all other administrative officers of the United States of the power to put in issue the citizenship status recognized by a certificate regular on its face.

*Id.* at 461. Although the Attorney General's opinion is limited to administrative attacks on administratively issued certificates, his point is still well taken.

In addition, on this record, the very first time that the Service served Mendiola with written reasons challenging her citizenship was late Wednesday, November 5, for a hearing in this court scheduled Friday, November 7 at 9:30 a.m. This would be insufficient notice to revoke the certificate administratively, and insufficient notice to set aside a court order judicially. Even though Mendiola herself may be responsible in part for the accelerated proceedings ("in part" because it is impossible to tell from this record how much the Service is to blame because of its alleged initial refusal in May to accept her petition), a day and a half's notice is insufficient time to defend one's citizenship, and denying Mendiola's petition might consequently implicate her right to due process.

Finally, the service is not unduly burdened by being required to follow its own procedures to revoke the certificate rather than attacking it collaterally. If Mendiola's certificate is revoked through proper channels—after she has had proper notice, litigated her case in the administrative hearing, and had appropriate appeals—then the Service has available the mechanisms to set aside her son's naturalization decree. A naturalization decree may be set aside pursuant to 8 U.S.C. § 1451(j) and Fed.R. Civ.P. 60(b). *See* 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1021, at 103 (1969). Here where a court has considered the existence of an unrevoked certificate of citizenship conclusive proof of citizenship, it would certainly be "newly discovered evidence" under Rule 60(b)(2) if the Service came back and reported that the certificate had been revoked; the new evidence would be that the old, dispositive evidence had been set aside. In addition, the Service always has available to it 8 U.S.C. § 1451(a), which provides for the institution of denaturalization procedures.

Therefore, it is appropriate that Mendiola's son be sworn in in Part I of this court on Wednesday, November 12, 1986.

Because of the need for expedition in this case, the court informally advised the parties of the outcome of this decision last Friday, November 7. At that time the Service informally asked for a stay of the order, which Mendiola opposed. The Service's application is denied.

IT IS SO ORDERED.